**Henry C. WOODWARD, Appellant–Respondent,**

**v.**

**Kimberlee A. NORTON, Appellee–Petitioner.**

No. 71A03–1004–DR–225.

Court of Appeals of Indiana.

Dec. 15, 2010.

---

Thomas R. Hamilton, Hunt Suedhoff Kalamaros, LLP, South Bend, IN, Attorney for Appellant.

Kimberlee A. Norton, Granger, IN, Appellee pro se.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Henry C. Woodward appeals the trial court's order finding that Special Judge Michael Gotsch had properly assumed jurisdiction over portions of the parties' post-dissolution proceeding and finding Woodward in contempt of court for failing to comply with his child support and child support-related obligations. Woodward argues that Special Judge Gotsch never properly assumed jurisdiction, that the trial court herein im-

properly retained jurisdiction over certain aspects of the proceeding, and that the trial court erred by finding Woodward in contempt of court. Finding no error, we affirm.

## FACTS

On May 19, 2004, appellee-petitioner Kimberlee A. Norton filed a petition to dissolve her marriage to Woodward. Following an extensive hearing, the trial court entered the dissolution decree on October 11, 2007.

On October 2, 2008, Woodward filed a petition to modify his child support obligation, and on October 3, 2008, he filed a motion for change of judge. As of October 3, there were a number of matters pending before the trial court: (1) four post-judgment rules to show cause filed by Norton on April 15, June 26, July 3, and August 5, 2008; and (2) a June 12, 2008, petition to transfer funds filed by Norton. On October 21, 2008, the trial court transferred the cause to Special Judge Gotsch.

After venue was transferred to Special Judge Gotsch, the proceedings herein were essentially bifurcated, with the trial court retaining jurisdiction over the matters that were pending at the time the cause was transferred and Special Judge Gotsch assuming jurisdiction over the matters filed after that time. Special Judge Gotsch also assumed jurisdiction over Woodward's petition to modify his child support obligation, and granted it temporarily on January 13, 2009, reducing Woodward's obligation from $798 per week to $300 per week.

Following an evidentiary hearing that took place on multiple days spanning multiple months, on May 26, 2009, the trial court found Woodward in arrears on child support in the amount of $16,140, on his share of the parties' children's tuition in the aggregate amount of $37,654.87, on his share of the children's uninsured healthcare expenses in the amount of $793.92, and on his share of the children's extracurricular activities in the amount of $2,368. The trial court set the issue of whether Woodward's arrearages constituted contempt of court for another hearing.

On October 13, 2009, Norton filed with Special Judge Gotsch a post-judgment rule to show cause regarding Woodward's non-payment of school tuition and extracurricular activities. On November 17, 2009, Special Judge Gotsch found Woodward in contempt and scheduled a contempt sentencing hearing. At the January 27, 2010, contempt sentencing hearing, Woodward argued for the first time that Special Judge Gotsch had not properly assumed jurisdiction over the proceedings because he had not signed and filed an acceptance of jurisdiction when the matter was transferred. Special Judge Gotsch referred all matters back to the trial court for a determination regarding the jurisdictional status of the case.

On March 1, 2010, the trial court held a hearing on Norton's pending rules to show cause and the pending jurisdictional issues. On April 1, 2010, the trial court issued an order finding, in pertinent part, as follows:

1. From and after October 21, 2008 until January 27, 2010 [Woodward] never objected to Judge Gotsch's assumption of jurisdiction and therefore [Woodward] has waived the issue.... By conducting hearings and entering orders on January 13, 2009, January 27, 2009, February 10, 2009, and November 17, 2009, Judge Gotsch evidenced his acceptance of appointment to the case. However, Judge Gotsch should file an acceptance of the appointment pursuant to Trial Rule 72(G) before proceeding further.

2. [Woodward] knowingly and willfully disobeyed the orders of the court relating to the payment of child support, school tuition, extracurricular activities, uninsured health care expenses, use of the designated parenting coordinator and the transfer of [his] Edward Jones SEP/IRA funds to [Norton] as part of the division of the marital estate.

3. [Woodward] had the ability to pay more in child support, school tuition, uninsured health care expenses and extracurricular activities than he did, having earned a substantial income in 2007 of approximately $387,000 from regular employment and having received substantial disability payments of $10,000 net per month starting in 2008 that continue to the present date.... No child support or child support related obligations were made out of [Woodward's] disability payments until the court entered an Immediate Income Withholding Order. In addition, [Woodward] willfully withdrew and spent all of the funds from his Edward Jones SEP/IRA account knowing that those funds belonged to [Norton].

4. Judgment is entered in favor of [Norton] and against [Woodward] in the amount of $33,127 representing the balance of funds ... that had been in the Edward Jones SEP account and which were removed and spent by [Woodward]....

5. The Amended Immediate Income Withholding Order ... is amended to state that [Woodward's] delinquency in the payment of child support and child support related obligations is the equivalent of more than twelve (12) weeks of support and that based on the information now available to the court, the maximum percentage of disposable income which is subject to withholding is sixty-five percent (65%) instead of fifty-five percent (55%)....

6. [Woodward] shall pay [Norton's] attorney fees in the amount of $14,000 ... for [her attorney's] representation of [Norton] regarding the various issues raised by [Norton] in her informations for rule to show cause....

\*　　\*　　\*

9. With the entry of this order, this court's limited jurisdiction over the rules to show cause pending at the time [Woodward] filed his change of venue from judge is now at an end. All further proceedings in this case shall be under the exclusive jurisdiction of [Special Judge Gotsch].

Appellant's App. p. 43–45. Woodward now appeals.

## DISCUSSION AND DECISION

### I. Jurisdiction of Special Judge Gotsch

■ The first issue raised by Woodward is the jurisdiction of Special Judge Gotsch. Specifically, Woodward argues that Special Judge Gotsch never properly assumed jurisdiction of the post-dissolution proceedings because he failed to sign and file an acceptance of appointment. Indiana Trial Rule 79(G) provides that a special judge has "fifteen (15) days from the date of appointment to decide whether or not to accept the case and enter his or her decision. The filing of the acceptance vests jurisdiction in the special judge...." It is undisputed that Special Judge Gotsch did not file an acceptance of the appointment.

It is also undisputed, however, that between October 21, 2008, when the trial court appointed Special Judge Gotsch, and January 27, 2010, Woodward did not object

to the special judge's jurisdiction. During that time, Special Judge Gotsch held multiple hearings and issued orders, including an order temporarily decreasing by over 50% the amount of Woodward's child support obligation. Woodward accepted the decrease in his obligation without complaint. It was only when Special Judge Gotsch later found him to be in contempt that he first raised the issue of jurisdiction.

■■ It is well established that "where a defendant fails to object to an irregularity in the appointment of a special judge, he accepts the appointment, submits to the jurisdiction, and waives the irregularity." *Catt v. State,* 749 N.E.2d 633, 644 (Ind.Ct. App.2001) (citing *Bivins v. State,* 485 N.E.2d 89, 92 (Ind.1985)). More specifically, "a party may not submit matters to and await rulings by a special judge before objecting to the special judge's presence in the action." *Thomas v. State,* 656 N.E.2d 819, 821 (Ind.Ct.App.1995).

Here, by filing motions with the special judge, accepting a decrease in his child support obligation entered by the special judge, and attending multiple hearings presided over by the special judge, Woodward waived any objection regarding Special Judge Gotsch's presence in the action. We encourage special judges to be careful to comply with Trial Rule 79(G), but a party may not sit idly by and remain silent about a missing acceptance of appointment for years, only complaining about it when an unfavorable ruling is entered. Woodward is entitled to no relief on this basis.

## II. Jurisdiction of the Trial Court

■ Woodward next argues that the trial court improperly retained jurisdiction over the matters pending before it at the

time it transferred the proceedings to Special Judge Gotsch.[1]

As with the first jurisdictional issue, Woodward failed to object to the trial court's jurisdiction over the pending matters at any time before the current ruling. The best time to have raised this issue would have been the first instance at which it became apparent that the trial court was retaining jurisdiction over the pending motions—in October 2008. But at that time, Woodward's counsel explicitly instructed the trial court that he believed that trial court *would* retain jurisdiction over the pending rules to show cause: "Your Honor, as much as I would like probably to have this all transferred to another judge, I think the rule [to show cause] stays with you, the petition for modification triggers the transfer on that plus anything subsequent." Appellant's App. p. 337. Having taken a contrary position in October 2008 and then having failed to raise this issue for years, Woodward has invited any error, waived the issue, and is not now entitled to relief.

■ Waiver notwithstanding, we note that Indiana Trial Rule 76(B) provides as follows:

In civil actions, where a change may be taken from the judge, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney. Provided, however, a party shall be entitled to only (1) change from the judge. After a final decree is entered in a dissolution of marriage case, a party may take only one change of judge in connection with petitions to modify that decree, regardless of the number of times new petitions are filed.

1. As an aside, we wonder who Woodward believes *did* have jurisdiction over the matter, if, as he argues, neither the trial court nor Special Judge Gotsch were entitled to preside?

As Woodward concedes, a motion to change judge in post-dissolution proceedings is prospective: "the right to a change of judge in connection with a petition to modify must be viewed prospectively, inasmuch as that right is derived from the newly-filed petition and does not relate back to pending matters." *In re Marriage of Turner*, 785 N.E.2d 259, 262 (Ind.Ct. App.2003) (applying Indiana Trial Rule 76).

Here, there were multiple rules to show cause against Woodward that had been filed by Norton that were pending at the time Woodward filed his petition to modify and motion for change of judge. Inasmuch as a change of judge is prospective, the trial court properly retained jurisdiction over the motions that were pending at the time the cause was transferred. Therefore, this argument must fail.

### III. Contempt Finding

■■■■ Finally, Woodward argues that the trial court erred by finding him in contempt. Whether a party is in contempt is left to the sound discretion of the trial court, and we will reverse only if the trial court's finding is against the logic of the evidence before it or is contrary to law. *Mosser v. Mosser*, 729 N.E.2d 197, 199 (Ind.Ct.App.2000). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with willful disobedience. *Piercey v. Piercey*, 727 N.E.2d 26, 32 (Ind.Ct.App.2000). To find a party in contempt for failure to pay child support or child support-related obligations, the trial court must find that

the party had the ability to pay child support and that the failure to do so was willful. *Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind.Ct.App.2005).

Here, it is undisputed that Woodward was in arrears for child support and other obligations related thereto in amounts exceeding $50,000. It is also undisputed that he was aware of these obligations and that he willfully failed to comply with those obligations.[2] Woodward's only contention on appeal is that he did not have the ability to fulfill his child support obligation.

The trial court inquired into Woodward's ability to pay and made a factual finding that he is able to make the ordered payments. Specifically, the trial court noted that in 2007, Woodward's income was $387,000, and since 2008, Woodward has received disability payments in the amount of $10,000 per month.

The only evidence to which Woodward directs our attention in support of his argument is already contained in the trial court's order: Woodward became disabled in 2008, stopped paying child support when he became disabled, and the initial income withholding order took 55% of his disability payments.[3] This evidence merely begs the question underlying his argument—is he able to pay his child support obligation? Woodward fails to answer that question in any specific or concrete way, giving us no insight into his overall financial health or true ability to make these payments. A bald assertion that he is unable to pay is

---

2. Woodward's argument that he removed the funds from his Edward Jones account at the direction of counsel is insufficient to reverse the contempt finding. He removed the money and he knew that it had been awarded to Norton in the dissolution decree. The reasons for removal are irrelevant; it was in contempt of court for him to take those funds in violation of the court order.

3. Woodward's statement that he commenced paying child support after his disability payments began ignores the salient fact that his payments commenced only *after* the trial court entered the income withholding order.

insufficient to reverse a trial court's factual finding.

The judgment of the trial court is affirmed.

VAIDIK, J., and BARNES, J., concur.