## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2020, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Greenfield, Indiana

ATTORNEY FOR APPELLEE

Kathrine D. Jack
Greenfield, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Ryann Buchanan,

*Appellant-Respondent,*

v.

Rhett Reed,

*Appellee-Petitioner.*

April 8, 2020

Court of Appeals Case No.
19A-JP-1806

Appeal from the
Rush Superior Court

The Honorable
Brian D. Hill, Judge

Trial Court Cause No.
70D01-0307-JP-19

**Altice, Judge.**

## Case Summary

[1] Ryann Buchanan (Mother) and Rhett Reed (Father) are the parents of one child, K.R. (Child), born in 2000. In 2003, paternity was established, and Father was ordered to pay weekly child support and a portion of Child's

uninsured medical expenses. In 2018, Mother filed a motion asking that Father be ordered to pay a portion of Child's college expenses and two motions for rule to show cause, which requested, respectively, that Father be held in contempt for failing to pay child support and for failing to pay his portion of Child's uninsured medical expenses. Mother appeals the trial court's denial of her three motions.

[2]     We affirm.

## Facts & Procedural History

[3]     Child was born to Mother in June 2000. In July 2003, Father filed a petition to establish paternity, and on September 25, 2003, the trial court issued an order establishing paternity, support, and parenting time. Mother was granted legal and physical custody of Child, and Father received parenting time pursuant to the Indiana Parenting Time Guidelines and was ordered to pay $65.53 per week in child support. The parties were to share uninsured medical expenses, with Father responsible for 60% and Mother responsible for 40%, after Mother paid the first $293.28 per year. Father paid child support through the Clerk's Office regularly, for the most part, in 2003 and 2004, more sporadically in 2005 and 2006, and thereafter he began making payments directly to Mother. Mother agrees that Father made some support payments to her by check and via PayPal between the years 2008 and 2018.

[4]     Mother married Norm Buchanan (Stepfather) in 2003. With exception of some months in 2016 and some months in 2018, Child resided with Mother and

Stepfather. During the spring of 2016, Child lived with Father in his Indianapolis home, and during that time, Father transported Child to and from Knightstown High School in Henry County. Child graduated from high school in May 2018, and at that time, Mother and Stepfather were separated but Child continued living in the family's home with Stepfather in Knightstown. Child was the president of her graduating class, involved in athletics, and received scholarships. In the fall of 2018, Child went to Flagler College in Florida, and in the spring of 2019, Child returned to Indiana and attended Ivy Tech in Anderson. Child was admitted to Purdue University in Lafayette for the fall of 2019.

[5] Between November 2004 and July 2018, there were no filings, hearings, or court activity in the case. In mid-2018, the Rush County Prosecutor's Office (the State) filed a petition to intervene for purposes of enforcing child support on Child's behalf pursuant to Title IV-D, which the trial court granted, and on January 2, 2019, the State filed a petition to reduce support arrearage to judgment. On January 24, 2019, Father filed a verified petition to terminate child support due to emancipation, alleging that Child turned eighteen years of age in June 2018 and was not living with either parent. On April 16, 2019, Mother filed a verified petition for order of parental contribution to post-secondary educational expenses. On May 21, 2019, Mother filed a verified motion for rule to show cause asserting that Father was in contempt for failing to pay uninsured medical expenses as ordered in September 2003. On June 27, 2019, Mother filed another verified motion for rule to show cause asserting that

Father was in contempt for failing to pay weekly child support as ordered. The trial court set all pending motions for a combined hearing on July 10, 2019.

[6] With regard to her motion for rule to show cause as to child support, Mother testified and presented various summary exhibits, including payments Father had made through the Clerk's Office and those paid directly to her by check or PayPal.[1] Her summary of arrearage calculated the total amount that Father should have paid in child support as $54,193.31, which she reduced by $24,956.19 for payments made by Father and an abatement of support for the period in 2016 when Child was living with him, for a resulting arrearage amount of $29,237.12. She proposed that Father pay such arrearage by $139 per week via income withholding order for five years. She asked that Father be held in contempt for his intentional failure to pay and that the court order him to pay half of her attorney's fees associated with his nonpayment.

[7] As to the motion for rule to show cause regarding the medical expenses, Mother testified and presented a summary of payments for unreimbursed medical expenses (with attached associated medical bills) that Mother paid between 2008 and the date of the 2019 hearing totaling $6795.71. Mother testified that there were additional medical bills that were incurred between 2003 and 2007 that Father did not pay, but she was not seeking recovery of

---

[1] At the start of the hearing, Mother and Father stipulated to the admission of the State's exhibit concerning payments made through the Clerk's Office and, by agreement of the parties, the court released the State from further participation in the hearing.

those because she did not have the specific amounts paid. She acknowledged that she had not previously presented documentation to Father for the medical expenses, or at most for only a few of them, and stated that she was willing to waive a contempt finding as to nonpayment of the medical bills. She asked that Father be ordered to repay her $6795.71 by paying a weekly amount over a five-year period.

[8] With regard to Mother's motion for Father to contribute to college expenses, evidence was admitted that Child attended Flagler College in the fall of 2018 and Ivy Tech in the spring of 2019. Mother stated that Father paid $5000 from a 529 college saving account and made other payments from his Elements Financial Account. Mother was satisfied with the payment arrangement between her and Father for the 2018-2019 school year and was not seeking further payment from him for that academic year. Her request was that Father be ordered to pay one-third of Child's college expenses going forward at Purdue University, expected to be a total of around $22,000 per year, divided one-third each between Mother, Father, and Child. She presented W-2 forms and tax returns from prior years to show that Father earned approximately $69,000 in 2017 and $51,000 in 2018. Records reflected that Mother earned $36,000 in 2018, and she testified that she expected to earn $51,000 in 2019.

[9] Father testified that he initially paid child support through the Clerk's Office but when Child was ten years old, for reasons not at issue in this appeal, he and Mother had disagreements concerning Child and parenting time, which they worked out, agreeing to "not involve Court" for that and future matters.

*Transcript* at 51. Around this time, Father began paying Mother by check. He testified that his payments were "more sporadic" in the years 2005-2009 and, toward his shortfall, he gave the tax exemption for Child to Mother rather than alternating between them. He stated that his child support payments in 2011-2018 were "more consistent." *Id*. at 76. Father stated that as to Child's extracurricular or medical expenses, he "never refused a payment asked of [him]." *Id.* at 62.

[10]     Father testified that he bought Child various cell phones over the years, with the last one costing $948, and paid the associated monthly fees for her phones, bought her a 2012 Honda Civic that cost $2500, drove her to and from Knightstown High School in 2016 incurring mileage cost of $2067, and paid $5400 to Flagler College. He asked the trial court to credit payment of those and other paid expenses toward his child support arrearage, leaving what he calculated to be an arrearage of $8648.98, and he proposed that he pay $75 every other week toward that arrearage. At the time of the hearing, his annual income was $67,500.

[11]     As to the medical expenses, he testified that bills were never presented to him or mentioned to him, other than one specific ultrasound for which he paid in 2018 or 2019. He testified that he asked Mother for a receipt or bill associated with Child's removal of her wisdom teeth in 2018, but never received any documentation.

[12] As to college expenses, Father stated that he had money saved in a 529 Plan for Child's college education, which he expected would total $20,000 by the end of 2019. He stated that he was willing to and planned to contribute to Child's college expenses, proposing that each parent pay at least $15,000, beyond what each had already paid.

[13] At the conclusion of the hearing, the trial court stated that it was "granting one petition and that's the one for the State[,]" the petition to reduce support arrearage to judgment, explaining to Mother and Father:

> I mean, it, it goes both ways here. Okay? I can sit here and chastise Dad for not following the Court Order. But also, it took eight years for Mom to decide that she's upset about it.

*Id.* at 80.

[14] More specifically, on the matter of uninsured medical expenses, the trial court denied Mother's motion for rule to show cause, finding that Mother never gave Father notice of the expenses and Mother "basically, kinda withdrew" her request to find Father in contempt. *Id.* at 81. The court also denied Mother's request that she be reimbursed $6795.71 for "back medical expenses" from 2008 to 2019, suggesting to Mother that in the future she submit an annual request for reimbursement, but ordered Father to pay $107.84, representing his portion of Child's 2019 unreimbursed medical expenses. *Id.*

[15] As to Mother's petition for an order of parental contribution to post-secondary expenses, the court denied the petition, finding that it was untimely given that

there had already been a year of post-secondary expenses that the parties already had "sorted out" on their own, and, further, both parties presented evidence that they were "interested in furthering their daughter's education" such that an order was not necessary. *Id*.

[16] As to the matter of child support, the trial court denied Father's petition to terminate child support due to emancipation, directing that Father's $65.53 weekly obligation continued until Child's nineteenth birthday (which was in June 2019, the month prior to the hearing) and terminated at that time.[2] The court also denied Mother's motion for rule to show cause regarding child support, noting that Father was "technically [] in violation of the Order, but . . . he's been in violation of the Order for about eight years . . . making other payments." *Id*.

[17] In granting the State's petition, the trial court entered a Judgment of Arrearage, based on Mother's proposed figure of $29,237.12, reduced by a $589 Father paid via a 2018 tax intercept and an abatement of $1048.48 for the sixteen weeks that Child lived with Father in 2016, resulting in an arrearage of $27,599.64[3] to be repaid at a minimum of $75 per week by income withholding order. The court ordered the parties to pay their own attorney's fees.

_____

[2] Father does not appeal the trial court's denial of his petition to terminate child support due to emancipation, and Mother does not appeal the trial court's determination that Father's child support obligation terminated on Child's nineteenth birthday.

[3] The trial court denied Father's request to credit his child support arrearage by his purchase of a car, cell phones and fees, mileage, and other paid expenses.

Thereafter, the trial court issued written orders consistent with its oral rulings. Mother now appeals.

## Discussion & Decision

### I. Contempt

[18] Mother filed two motions for rule to show cause, asking that Father be found in contempt for his failure to pay uninsured medical expenses and his failure to pay child support as ordered in 2003. Whether a party is in contempt is left to the sound discretion of the trial court, and we will reverse only if the trial court's finding is against the logic of the evidence before it or is contrary to law. *Woodward v. Norton*, 939 N.E.2d 657, 662 (Ind. Ct. App. 2010). When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005).

[19] Here, the trial court denied Mother's two motions for rule to show cause, and therefore she is appealing from a negative judgment. *See G.G.B.W. v. S.W.*, 80 N.E.3d 264, 269 (Ind. Ct. App. 2017) (where father appealed from denial of his motion for rule to show cause and contempt petition), *trans. denied*. "In such circumstances, we will reverse the judgment only if it is contrary to law—where the evidence leads to but one conclusion and the trial court reached the opposite conclusion." *Id.*

[20] Regarding Mother's motion for rule to show cause regarding unreimbursed medical expenses, the record reflects that Mother abandoned her request that

the court find Father in contempt for his nonpayment. The relevant exchange on direct examination was:

> Q: . . . [B]ut you're still wanting to proceed with an adjudication of the medical arrears that, that you have been able to determine, correct?
>
> A: Yes.
>
> Q: . . .As it relates to a finding of contempt, what's your position on that as it relates to Father with respect to his [] non-payment of these medical expenses?
>
> A: Not sure I understand.
>
> Q: Well, are, are you willing to waive . . . a contempt finding on these, given the fact that he, he didn't see some of these bills?
>
> A: Yes.

*Transcript* at 13-14. At the conclusion of the evidence, the trial court found that Mother had not given Father notice of the bills and, further, she "basically . . . withdrew" her request for a finding of contempt. *Id*. at 81. The court then denied Mother's motion for rule to show cause but ordered Father to pay his portion of Child's 2019 unreimbursed medical expenses. We find no error with the trial court's decision.

[21] We next turn to Mother's motion for rule to show cause concerning Father's failure to pay child support in accordance with the September 2003 order. "To

find a party in contempt for failure to pay child support or child support-related obligations, the trial court must find that the party had the ability to pay child support and that the failure to do so was willful." *Woodward*, 939 N.E.2d at 662.

[22] In this case, while there was evidence presented of Father's income in 2017, 2018, and 2019, there was no evidence concerning Father's income in prior years, his financial situation, or his ability to pay. Mother argues, "Clearly, the existence of an arrearage in a sum in excess of $27,000.00, when Father's weekly support obligation was only approximately $65.00, establishes a willful violation of the Court's Order." *Appellant's Brief* at 10. However, our courts have recognized that "[s]imply establishing the existence and knowledge of an arrearage may not amount to a willful disregard of a court order." *Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind. Ct. App. 2002). Here, Father maintained that, by agreement of the parties, he made payments directly to Mother over the years, and she acknowledged receipt of some or most of those payments. Father testified that, until his receipt of the State's petition to reduce arrearage to judgment in the summer of 2018, he believed he was "basically" in compliance with his support obligation. *Transcript* at 54. We find no evidence was presented to establish that Father's failure to pay weekly support in accordance with the trial court's 2003 order was willful. Accordingly, under the

circumstances of this case, the trial court's decision to deny Mother's motion and decline to find Father in contempt was not contrary to law.[4]

## II. Request for College Contribution Order

[23] Mother argues that the trial court erred when it denied her petition for an order of parental contribution to post-secondary expenses. "'Although a parent is under absolutely no legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate.'" *Deckard v. Deckard*, 841 N.E.2d 194, 202 (Ind. Ct. App. 2006) (quoting *Gilbert v. Gilbert*, 777 N.E.2d 785, 793 (Ind. Ct. App. 2002)). A trial court's decision concerning financial contributions to college endeavors will be affirmed unless the decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*; *see also Duncan v. Duncan*, 81 N.E.3d 219, 225 (Ind. Ct. App. 2017) (trial court's apportionment of college expenses is reviewed under clearly erroneous standard and we will affirm unless trial court's order is clearly against the logic and effect of the facts and circumstances which were before the court). "In determining whether the trial court's decision is clearly erroneous, we consider only the evidence and reasonable inferences favorable to the judgment without reweighing evidence or judging witness credibility." *Duncan*, 81 N.E.3d at 225.

---

[4] Indeed, the trial court lacked the authority to find Father in contempt on this record. *See Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005) (reversing trial court's order finding father in contempt because trial court lacked authority to use contempt power where there was no evidence that father had the ability to pay child support and that his failure to do so was willful).

[24] Indiana Code section 31-16-6-2(a) provides that a child support order may include amounts for the child's education in post-secondary institutions, taking into account: the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. Ind. Child Support Guideline 8(b) likewise states that the court should "weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense."

[25] Here, the parties presented evidence that in high school Child received good grades, was involved in sports, and received scholarships to Flagler College, reflecting Child's general aptitude and ability for college. The record shows, and the trial court recognized, that, without court intervention, the parties financed or helped to finance Child's first year of college. Evidence was presented that the full expected cost to attend Purdue University would be around $22,000 per year, although no evidence was presented as to Child's performance in her freshman year of college or possible scholarships or loans or her ability to pay. Mother and Father each testified to having money saved for Child's post-secondary education, and both parents expressed an intention to contribute to Child's college expenses. However, there was no specific evidence presented as to the parties' respective financial circumstances or ability to pay. Father suggested he and Mother each contribute an additional $15,000 toward

Child's college pursuits. Mother requested that the court enter an order directing that the cost be divided equally between her, Father, and Child.

[26] The trial court denied Mother's request, finding that an order of parental contribution was not necessary, as the parties each had saved money for Child's college expenses, testified to their intention to contribute to her future expenses, and had successfully cooperated with financing Child's freshman year of college. Rather, the court found, "they can do [] as they see fit" and "don't need the Court telling them exactly how to do that." *Transcript* at 81. Based on the record before us, we do not find that the trial court's decision to deny Mother's petition for an order of parental contribution to college expenses was clearly erroneous.

[27] Judgment affirmed.

Bradford C.J. and Robb, J., concur.