Lonnie Thomas **MARKS**, Appellant–Petitioner,

v.

Teka (Marks) **TOLLIVER**, Appellee–Respondent.

No. 59A05–0507–CV–389.

Court of Appeals of Indiana.

Nov. 15, 2005.

Publication Ordered Dec. 13, 2005.

Thomas M. Frohman, Jamie L. Andree, Indiana Legal Services, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Lonnie Thomas Marks ("Father") appeals an order of the Orange Circuit Court finding him in contempt for failure to pay child support to Teka Marks Tolliver ("Mother"). We reverse.

### Issues

Father presents four issues for review, which we consolidate and restate as the following three issues:

I. Whether Father was entitled to the appointment of counsel prior to the finding of contempt;

II. Whether there is sufficient evidence to support the trial court's finding of contempt; and

III. Whether the contempt order is contrary to law because it provides for Father's summary incarceration upon his failure to pay a single future installment of child support.

### Facts and Procedural History

On November 8, 2002, the Orange Circuit Court dissolved the marriage of Father and Mother and ordered Father to pay $72.00 per week as child support for their two children. On July 15, 2004, the Orange County Prosecutor filed an Information for Rule to Show Cause against Father for failure to pay child support as ordered. On October 25, 2004, the trial court conducted a hearing and found that Father had accumulated a child support arrearage of $2,584.41 as of September 30, 2004. The trial court observed that Father had a pending application for Social Security disability benefits and therefore continued the matter without finding Father in contempt of court.

On June 16, 2005, the trial court conducted a second hearing and found that Father had accumulated a child support arrearage of $4,548.41. Father was found to be in contempt of court. He was ordered to pay weekly child support of $72.00 and to pay an additional $500.00 on his child support arrearage by July 21, 2005. The trial court advised Father that he could avoid ninety days incarceration by fully complying with those payment provisions. The trial court's written order also included a provision that a Writ of Attachment would issue against Father without further hearing should he miss a future child support payment. Father now appeals.

## Discussion and Decision

### I. Appointment of Counsel

▇ Father claims that he is indigent and in jeopardy of incarceration and thus, the trial court erred by failing to provide court-appointed counsel at the outset of the contempt hearing.[1] The trial court first advised Father of any right to request court-appointed counsel at the conclusion of the contempt hearing, as follows:

> The Court finds you in contempt. I intend to put you in jail. I'm now offering you the opportunity for counsel. If you cannot afford an attorney, the Court will appoint you an attorney. Uh, you have about one minute to tell me why I should not put you in jail for ninety days and how it is that you're gonna start paying your current support starting tomorrow and keep it paid up until our next hearing, which will be thirty days from now, and paying $500.00 on that arrearage. If you can satisfy me in the next one minute, I will not remand you

to the sheriff, otherwise you're going to the Orange County Jail.

(App.6.)

▇ Generally, money judgments are not enforceable by contempt. *Pettit v. Pettit,* 626 N.E.2d 444, 447 (Ind.1993). However, the proscription against imprisonment for debt in Article I, Section 22 of the Indiana Constitution does not prevent the use of contempt to enforce child support obligations. *Id.* at 445. "[C]ontempt is always available to assist in the enforcement of child support, at least in respect of unemancipated children, including orders to pay accrued arrearages and money judgments against delinquent parents for past due amounts." *Id.* at 447.

▇ Nevertheless, a person may not be incarcerated by the state without first being advised of his or her constitutional right to counsel. *Branum v. State,* 822 N.E.2d 1102, 1104 (Ind.Ct.App.2005) (citing *In re Marriage of Stariha,* 509 N.E.2d 1117, 1122 (Ind.Ct.App.1987)). Further, regardless of whether a private person or the state initiates the contempt proceedings, if the individual in jeopardy of incarceration is indigent, he or she may not be incarcerated without having counsel appointed to represent him or her. *Id.*

Accordingly, if Father is indigent, he is eligible for court-appointed counsel prior to the conduct of any contempt hearing,

### II. Sufficiency of the Evidence

▇ Next, Father contends that there is insufficient evidence to support the finding of contempt. The trial court has authority to use its contempt power only when the parent has the ability to pay the support due and his failure to do so was willful. *Pettit,* 626 N.E.2d at 448.

---

1. The State contends that any error was harmless, because Father was not immediately incarcerated upon the finding of contempt.

However, it is clear from the court's written order that Father was in jeopardy of future incarceration.

We will reverse the trial court's finding of contempt where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Mitchell v. Mitchell,* 785 N.E.2d 1194, 1198 (Ind.Ct.App.2003). When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

Here, Father testified that he is unable to work because of "degenerative disc disease and acute arthritis all through [his] body and several injuries." (Appellee's App. at 13.) He also testified that he had no assets and no income, received food stamps and lived rent-free in a trailer provided by his stepfather. Respondent's Exhibit A, a Notice of Hearing Decision issued by the Indiana Family & Social Services Administration, disclosed that Father was awarded Medical Assistance to the Disabled based upon Indiana's Medicaid disability criteria. Specifically, the notice provided:

> The medical and social evidence presented supports a finding that the appellant's limitations substantially impair his ability to perform labor, services, or engage in a useful occupation including sedentary work when considering his functioning skills, age, education, and work history. The appellant meets the disability requirements for Indiana's Medicaid Program.

(App.16.) Father testified that he also applied for Social Security disability benefits. However, he was denied those benefits, and has initiated an appeal of the denial. The State presented no evidence contravening Father's characterization of his medical or financial circumstances.

After the finding of contempt, Father suggested it might be possible to get funds from his family. However, there is no evidence that a family member was willing

or able to provide such funds to Father. In short, there was no evidence that Father had the ability to pay child support and that his failure to do so was willful. Consequently, the trial court lacked the authority to use its contempt power.

### III. Order for Future Summary Incarceration

 Finally, Father challenges the following provision of the trial court's order:

> If the original petitioner falls behind in his/her child support payments by 0 weeks then a Writ of Attachment shall be issued without further hearing.

(App.5.) Unlike criminal indirect contempt, the primary objective of a civil contempt proceeding is not to punish the contemnor but to coerce action for the benefit of the aggrieved party. *Thompson v. Thompson,* 811 N.E.2d 888, 905 (Ind.Ct.App.2004), *trans. denied.* In a civil contempt action, imprisonment is for the purpose of coercing compliance with the order. *MacIntosh v. MacIntosh,* 749 N.E.2d 626, 631 (Ind.Ct. App.2001), *trans. denied.* Nevertheless, a contempt order that neither coerces compliance with a court order nor compensates the aggrieved party for loss, and does not offer an opportunity for the recalcitrant party to purge himself, may not be imposed in a civil contempt proceeding. *Flash v. Holtsclaw,* 789 N.E.2d 955, 959 (Ind.Ct.App.2003), *trans. denied.*

 As such, one who is held in civil contempt for failing to pay support should be ordered to pay the total arrearage and given an opportunity to purge himself or herself of contempt by paying the amount owed. *Mitchell,* 785 N.E.2d at 1199. However, incarceration for contempt is legally allowable only where the support order upon which release is conditioned is attainable by the obligor. *Bra-*

*num v. State,* 829 N.E.2d 622, 623 (Ind.Ct. App.2005).

Here, the trial court has fashioned an order that provides for prospective incarceration upon omission of any future child support installment without inquiry into the obligor's ability to pay. In essence, the order presumes willful non-compliance. This contravenes our Supreme Court's directive in *Pettit.* As such, it must be reversed.

Reversed.

SHARPNACK, J., and DARDEN, J., concur.

## ORDER

This Court heretofore handed down its opinion in this appeal on November 15, 2005, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish, alleging therein that said decision succinctly settles three issues concerning civil contempt of court by reason of failure to pay child support, which come before trial courts on a daily basis. The Appellant alleges that this decision therefore clarifies existing law in a concise manner which, if published, will provide useful guidance to petitioners and courts alike.

The Court having examined said Motion to Publish, having reviewed its opinion in this case and being duly advised, now finds that the same should be granted and this Court's opinion heretofore handed down in this cause marked Memorandum Decision, Not for Publication, should now be ordered published.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish is GRANTED, and this Court's opinion heretofore handed down in this cause on November 15, 2005, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.