

FILED

08/31/2017, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Delgado
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandis McCollum (formerly
Brandis Adams),

*Appellant,*

v.

Indiana Family and Social
Services Administration,

*Appellee.*

August 31, 2017

Court of Appeals Case No.
08A04-1703-GU-614

Appeal from the Carroll Circuit
Court

The Honorable Benjamin A.
Diener, Judge

Trial Court Cause No.
08C01-0509-GU-17

**Pyle, Judge.**

## Statement of the Case

Brandis McCollum ("Mother") appeals the trial court's finding that she was in civil contempt of court for failing to pay her child support as ordered, as well as the trial court's sanction of one hundred and fifty (150) weeks incarceration.

She argues that there was no evidence that she willfully disobeyed the trial court's order, as is required for a citation for civil contempt, and that the sanction the trial court imposed was improperly punitive. Because we conclude that there was sufficient evidence that Mother willfully disobeyed the trial court's order, we affirm in part. However, we also conclude that the trial court's sanction was improperly punitive. Accordingly, we reverse in part and remand with instructions for the trial court to impose a contempt sanction consistent with this opinion.

We affirm, reverse in part, and remand.

## Issues

1. Whether the trial court abused its discretion when it found that Mother was in civil contempt of court.

2. Whether the trial court abused its discretion when it imposed a sanction of one hundred and fifty (150) weeks of incarceration for Mother's contempt of court citation.

## Facts

The civil contempt citation at issue in this case resulted from Mother's longstanding failure to pay her child support obligations, as well as her failure to participate in a drug treatment program as ordered by the trial court. Mother has three children, two of whom are in the custody of their grandmother ("Grandmother"), their legal guardian. As a result of Grandmother's guardianship, Mother is required to pay weekly child support to Grandmother

for the two children in her care.[1]  The amount and original date of her child support orders are not clear from the record.

[4]     In the time between the trial court's original child support order and June 2011, it is apparent that Mother accrued a significant support arrearage, although the amount is not stated in the record.[2]  As a result of this arrearage, on June 30, 2011, the trial court ordered Mother to appear and show cause for why she had not paid her child support.  At a hearing on the order to show cause, Mother presented evidence that she had not been fulfilling her child support obligations because she was unemployed.  Based on this evidence, the trial court set a review hearing for two weeks later and ordered Mother to bring pay stubs and written proof of job applications to the review hearing.

[5]     At the hearing two weeks later, Mother advised the court that she had been offered employment the previous day and had made a $200.00 child support payment.  The trial court set a review hearing for two months later and ordered Mother to immediately let the IV-D Office know when she officially began to work.  (Appellant's App. Vol. 2 at 3).

---

[1] Mother's child support orders are not a part of the record; nor are any of the trial court's orders other than its February 16, 2017 order that is the subject of this appeal.  We have drawn the facts concerning Mother's child support history from the Chronological Case Summary ("CCS").

[2] Mother's child support obligation as of June 2011 was $50 per week, plus $50 to be paid towards her arrearage.

[6]     Two more months passed, and Mother's child support arrearage grew to $6,009.00, in spite of her new employment.[3] As a result, at the next review hearing on November 17, 2011, the trial court ordered income to be withheld from Mother's paychecks. Thereafter, Mother failed to appear at two subsequent review hearings. The trial court issued a body attachment, and Mother was arrested on February 28, 2013.

[7]     At the hearing after Mother's arrest, the trial court found that her child support arrearage had grown to $8,996.25. The State requested that the trial court find Mother in contempt of court for failing to pay the child support as ordered, and the trial court appointed an attorney to represent her in the contempt cause of action. The court then set a review hearing and ordered Mother's child support obligation to remain at $100 per week—$50 for support and $50 to be applied towards her arrearage—until the hearing.

[8]     By June 27, 2013, two months later, Mother owed $9,046.25. The trial court found her in contempt of court for failing to comply with its child support order and sentenced her to ninety (90) days in jail with no good time credit. However, the trial court stayed the sanction and told Mother that she could purge herself of the contempt before the next review hearing by complying with its order and reducing her arrearage.

---

[3] It is not clear how long this employment lasted. It is apparent that Mother has gone through multiple periods of unemployment, but there is no evidence in the record as to when each period began and ended, except where we have specified in the facts.

[9] Thereafter, Mother failed to purge herself of the contempt and also failed to appear at her next review hearing. Thus, on October 31, 2013, the trial court ordered her to serve her previously stayed contempt sanction of ninety (90) days imprisonment. Nevertheless, the trial court again informed Mother that she could purge her contempt and be released from imprisonment, this time by paying $2,000 towards her arrearage. Mother did not pay $2,000 towards her arrearage and instead served her ninety (90) day sanction in jail.

[10] Following Mother's ninety days of imprisonment, she continued to miss her child support payments. On May 23, 2016, the State filed another motion for the trial court to order Mother to show cause for why she should not be held in contempt of court for her continued failure to pay child support. The trial court set a hearing on the motion for July 7, 2016. However, the hearing did not occur in July as planned because Mother failed to appear. The trial court issued another body attachment, and Mother was arrested on October 26, 2016.

[11] After Mother's arrest, the trial court held a hearing on the State's rule to show cause. At the hearing, Mother revealed that she had recently finished serving a three-month sentence for theft in the Tippecanoe County Jail and was still on probation for that conviction. She had also been charged with using "spice," but the State had dismissed that charge after she had completed a diversion program. (Tr. 29). Since her release from jail, she had enrolled in a substance abuse treatment program called the "Through the Gate Program." (Tr. 20).

[12] At the conclusion of the hearing, the trial court found Mother in civil contempt of court "for willfully failing to pay child support as ordered despite the ability to do so." (Appellant's App. Vol. 2 at 36). However, the court deferred imposing a sanction for the contempt citation until a review hearing in February 2017. The court's order provided that Mother could purge her contempt before that review hearing by paying her court-ordered support. The trial court also conditioned Mother's release on her attending and completing the Through the Gate Program.

[13] Subsequently, the trial court held a review hearing as planned on February 16, 2017. By then, Mother's child support arrearage had grown to $15,296. At the hearing, she admitted that she had not made a child support payment since February 11, 2016, over a year earlier. However, she testified that she had been working at a store called Discount Tobacco for three weeks and had just gotten hired the day before to work a second job at Burger King. Her job at Discount Tobacco paid $7.50 per hour and she worked there thirty-eight hours per week. Her job at Burger King paid $9.00 per hour, and she had been guaranteed fifteen hours of work per week there. She said that she had previously had difficulty getting a job due to her convictions, lack of transportation, and inability to obtain appropriate work clothes.

[14] With respect to her substance abuse treatment, Mother admitted that she had completed only five days of the Through the Gate Program after the previous hearing. She testified that she had quit the program after five days because she had discovered that the program would take sixteen months to complete unless

she quit work for the first six months.  She said that, since leaving the Through the Gate Program, she had been attending substance abuse classes at the SURF Center three to four times per week.

[15]   Also at the hearing, the court questioned Mother about the diversion program she had previously completed so that the State would dismiss her charge for using spice.  Specifically, Mother and the court engaged in the following exchange:

> THE COURT:  Ok and that was the one that was dismissed?
>
> [MOTHER:]  Success, yes sir.
>
> THE COURT:  Because you paid a fee up front?
>
> [MOTHER:]  Because I paid the diversion fee…
>
> THE COURT:  Because you paid a fee up[]front…
>
> [MOTHER:]  And I also…
>
> THE COURT:  That's how diversions work[,] right?
>
> [MOTHER:]  No[,] and you have to be good for three hundred and sixty…
>
> THE COURT:  Ma'am.
>
> [MOTHER:]  Yes[,] sir.
>
> THE COURT:  You paid, we're going step by step.  You paid a fee up front correct?
>
> [MOTHER:]  Yes[,] sir they took my bond, yes sir and then I had to pay the remainder, one hundred and twenty[-]seven dollars.

THE COURT: Ok. So how much total did you pay for that case?

[MOTHER:] Three hundred and twenty[-]eight dollars.

THE COURT: Three hundred and twenty[-eight] dollars. That did not go to child support did it?

[MOTHER:] No[,] sir.

THE COURT: You had the money to pay three hundred and twenty[-]eight dollars, correct?

[MOTHER:] No[,] sir. I didn't bond myself out. I was.[..]

THE COURT: So was this, was this fake currency or was this U.S. dollars?

[MOTHER:] No[,] sir. It was paid by someone else.

THE COURT: Not the question. Was this real currency?

[MOTHER:] Yes[,] sir.

THE COURT: And for your benefit?

[MOTHER:] Yes[,] sir.

THE COURT: So it existed, the three hundred and twenty[-]eight dollars?

[MOTHER:] Yes[,] sir.

THE COURT: And that went to avoid conviction for a spice charge?

[MOTHER:] Yes[,] sir.

THE COURT: Because that's important[,] right? That's most important?

[MOTHER:] It's important[,] sir, yes.

THE COURT: More important tha[n] paying support for your children?

[MOTHER:] No[,] sir[,] but.

THE COURT: Well[,] [it] would have to be because that was the choice that you made, correct?

[MOTHER:] Yes[,] sir.

THE COURT: They were both available options. You could admit guilt to the offense, if you were guilty of it, I don't know if you were. They filed charges[,] so the State alleged you were guilty. You could have admitted guilt, served a sentence, whatever[,] but instead you chose to raise funds from an alternative source, avoid the conviction[,] and then pay more funds to complete the diversion program, correct?

[MOTHER:] Yes[,] sir.

(Tr. 30-31).

[16] At the conclusion of the hearing, the trial court determined that Mother was at least one hundred and fifty weeks behind on her child support payments and, based on that duration, imposed a sanction of one hundred and fifty (150) weeks imprisonment, to be served on work release, for her contempt citation. The court stayed her child support obligation and provided that Mother could be released from custody at any point during the one hundred and fifty (150) weeks if she were able to reduce her arrearage to below $7,500. Mother now appeals.

# Decision

On appeal, Mother argues that the trial court abused its discretion when it found that she was in civil contempt of court. She also argues that the trial court's sanction of one hundred and fifty (150) weeks imprisonment was improper. We will address each of those issues in turn.

## 1. Contempt Finding

First, Mother argues that the trial court abused its discretion when it found that she was in civil contempt of court. She contends that there was not sufficient evidence to prove that she "willfully" disobeyed the trial court's child support order because the evidence demonstrated that she did not have the ability to pay the child support. She notes that she had only recently gained employment and claims that she had "started to make child support payments shortly after said employment, even going so far as to contact the Carroll County IV-D Office to provide them with the employment information so that an income withholding order could be implemented." (Mother's Br. 10).

To hold a party in contempt for violating a court order, the trial court must find that the party acted with "willful disobedience." *Himes v. Himes*, 57 N.E.3d 820, 829 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*. With respect to child support, "[s]imply establishing the existence and knowledge of an arrearage may not amount to a 'willful disregard of a court order.'" *Id.* (quoting *Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind. Ct. App. 2002)). The trial court must also find that the party had the ability to pay the child support. *Woodward v. Norton*,

939 N.E.2d 657, 662 (Ind. Ct. App. 2010). We will reverse the trial court's finding of contempt where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005). When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* The party in contempt bears the burden of demonstrating that her acts were not "willful." *Emery v. Sautter*, 788 N.E.2d 856, 859 (Ind. Ct. App. 2003).

[20] Mother's argument is essentially a request that we reweigh the evidence, which we will not do. *See Marks*, 839 N.E.2d at 707. She contends that there was no evidence that she had the ability to pay any child support, but the trial court engaged in a lengthy conversation with her about her decision to pay fees to a diversion program in order to avoid her spice charge. The trial court noted that, even though Mother had borrowed the money from someone else, she could have used that money to provide support for her children rather than to avoid a conviction. We will not re-weigh this evidence of Mother's ability to pay. Moreover, we note that Mother did not "start[] to make child support payments shortly after [gaining] employment" as she argues in her brief. (Mother's Br. 10). She testified at the hearing that she had not made any payments since February 11, 2016. Because there was evidence that Mother had the ability to pay part of her child support arrearage and chose not to do so, we conclude that

her failure to pay that support was willful.[4]  Accordingly, the trial court did not abuse its discretion in finding her in contempt of court.

## 2. Sanction

[21] Next, Mother argues that the trial court's sanction of one hundred and fifty (150) weeks of imprisonment, to be served on work release, was improper because it was punitive in nature, rather than coercive as civil contempt sanctions are required to be.  We agree.

[22] The primary distinction between criminal contempt sanctions and civil contempt sanctions is that criminal contempt sanctions may be punitive in nature, whereas civil contempt sanctions must be coercive or remedial rather than punitive.  *See Duemling v. Fort Wayne Cmty. Concerts, Inc.*, 188 N.E.2d 274, 276 (Ind. 1963).  This is because the "objective of a civil contempt proceeding is not to punish, but rather to coerce action for the benefit of the aggrieved party." *Id.*  Imprisonment is a permissible sanction for an act of civil contempt, but "'[i]f the judgment seeks to coerce the defendant into doing an affirmative act by confinement in jail, it must provide that the imprisonment cease as soon as the act is done, so that it gives the defendant[] the key of his prison in his own

---

[4] Notably, in *Marks* we held that there was no evidence that a father had the ability to pay child support even though he suggested that "it might be possible to get funds from his family." *Marks*, 839 N.E.2d at 707. However, our conclusion there was based on our reasoning that "there [was] no evidence that a family member was willing or able to provide such funds to Father." *Id.* That reasoning is not applicable here as Mother was able to borrow money and chose to allocate it to her diversion program rather than her child support obligation.

pocket.'" *Hunter v. State*, 802 N.E.2d 480, 484 (Ind. Ct. App. 2004) (quoting *D.W. v. State*, 673 N.E.2d 509, 512 (Ind. Ct. App. 1996), *trans. denied*). In other words, the contemnor must be given the opportunity to "purge" the contempt and gain release from prison. *Moore v. Ferguson*, 680 N.E.2d 862, 866 (Ind. Ct. App. 1997), *trans. denied*. Significantly, we have held that "incarceration for contempt is legally allowable only where the support order upon which release is conditioned *is attainable* by the obligor." *Marks*, 839 N.E.2d at 707 (emphasis added).

[23] Here, the trial court provided that Mother could purge her contempt and end her imprisonment by paying approximately $7,797 of her child support arrearage. Mother argues that, even though the trial court provided for her release from imprisonment upon her compliance with its order, the sanction was nevertheless punitive in nature because it was realistically unattainable. In other words, she contends that the trial court essentially did not give her the "key" to her prison as required. *See Hunter*, 802 N.E.2d at 484.

[24] We acknowledge that another panel of this Court has held that even an excessive imprisonment term or purge requirement can be an acceptable sanction as long as the defendant is given the opportunity to purge the contempt and obtain release from jail. *See id.* (finding that an indefinite imprisonment term and a purge requirement of $18,000 was permissible). However, we find that Mother's civil contempt sanction here was punitive. A critical distinction between criminal contempt, through which a court may "punish" a defendant for past actions, and civil contempt, through which a court may not do so,

*Duemling,* 188 N.E.2d at 276, is that a party subject to criminal contempt "is afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys." *Liming v. Damos*, 979 N.E.2d 297, 301 (Ohio 2012) (citing *U.S. v. Dixon*, 113 S.Ct. 2849 (1993)), *cert. denied*. Likewise, a parent who has failed to pay child support may be charged criminally with felony nonsupport of a dependent child and receive a prison sentence. I.C. § 35-46-1-5. A conviction for nonsupport of a dependent child as a Level 6 felony, which is what Mother would have received if she had been charged criminally, carries a maximum sentence of two and one half (2½ years) and an advisory sentence of one (1) year. I.C. § 35-50-2-7. As with a criminal contempt charge, a person charged with a nonsupport of a dependent child felony also receives important constitutional due process protections. *See* U.S. CONST. amend. XIV, § 1 (declaring that no person shall be deprived "of life, liberty, or property, without due process of law"). We find it inconceivable that a court could properly sanction a defendant in a civil contempt proceeding, where the defendant has lesser constitutional protections, with a longer prison sentence than the maximum they could receive if charged criminally with all of a criminal proceeding's constitutional protections. As Mother's sanction here, assuming she is not able to purge her contempt, amounts to three years, it is greater than the maximum sentence the trial court could have imposed if she had been charged criminally. We cannot in good faith find such a sanction appropriate.

[25] Moreover, we find that the amount of child support arrearage Mother must purge in order to be released from imprisonment is so excessive as to be

unobtainable and, thus, is punitive rather than coercive. In *Moore v. Ferguson*, 680 N.E.2d 862, 864 (Ind. Ct. App. 1997), *trans. denied*, Moore was found in contempt of court for failing to pay child support in nine different causes. *Id.* The trial court ordered him imprisoned for one hundred and eighty (180) days in each cause, with the terms to run consecutively, unless Moore purged his contempt by paying ten percent of his arrearage in each cause. *Id.* Moore argued on appeal that the total amount he had to pay to purge his contempt— $7,859.70—was so excessive that it was unobtainable and, therefore, punitive rather than coercive. *Id.* A different panel of this Court held that it was not punitive because it was only ten percent of his total arrearage for each cause. *Id.* at 866.

[26] In contrast, the amount Mother must purge in order to be released from prison is over fifty percent of her total arrearage. Further, Mother testified that, while she has obtained employment, her primary job pays only $7.50 per hour. At that rate, it will take Mother a considerable amount of time in work release to purge her contempt, if she is even able to do so. As we noted above, "incarceration for contempt is legally allowable only where the support order upon which release is conditioned *is attainable* by the obligor." *Marks*, 839 N.E.2d at 707 (emphasis added). Further, our Legislature emphasized in its "rule to show cause" statutory provisions that a person charged with indirect contempt should be given a "*reasonable and just* opportunity to be purged of the contempt." I.C. § 34-47-3-5 (emphasis added). We conclude that in light of Mother's demonstrated employment possibilities and the excessive amount the

trial court ordered her to pay to purge her contempt, it is not reasonably likely that Mother will be able to attain the conditions necessary for her release. It is axiomatic that no amount of imprisonment can coerce a defendant into completing an action that is not practically possible to complete. Accordingly, we conclude that the trial court's conditions for Mother's imprisonment were punitive in nature rather than coercive and, accordingly, not proper for a civil contempt sanction. As a result, we reverse the trial court's sanction and remand with instructions for the trial court to impose a sanction that is coercive in nature.

[27] Affirmed in part, reversed in part, and remanded.

Riley, J., and Robb, J., concur.