FILED

May 27 2020, 7:48 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Amy. E. Karozos
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bobby D. Wine,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | May 27, 2020<br><br>Court of Appeals Case No.<br>19A-PC-2268<br><br>Appeal from the Wabash Circuit<br>Court<br><br>The Honorable Robert R.<br>McCallen, III, Judge<br><br>Trial Court Cause No.<br>85C01-1902-PC-251 |

**Altice, Judge.**

## Facts and Procedural History

[1]     Bobby Wine appeals the denial of his petition for post-conviction relief, arguing that both trial and appellate counsel were ineffective for not objecting to the aggregate 720-day sentence that was imposed on four counts of criminal

contempt. The State presents an issue of first impression on cross-appeal, claiming that this cause must be dismissed for lack of subject matter jurisdiction because the post-conviction rules do not apply to criminal contempt adjudications.

[2]     We affirm.

## Facts and Procedural History

[3]     On July 30, 2012, Wine was charged with dealing in a controlled substance, a class B felony and was subsequently convicted of that offense following a three-day jury trial. During the trial, the trial court specifically found Wine in direct criminal contempt on five separate occasions and sentenced him to 180 days on each count for an aggregate term of 900 days. [1] Wine was repeatedly disruptive throughout the course of the trial, and the trial court warned Wine after the first episode that "for each and every contempt, [Wine] will suffer 180 days in the Wabash County Jail. Each and every one, consecutive." *Transcript Vol. I* at 4.

[4]     The first instance of contempt occurred on day one of the trial, the second and third happened on day two, and the next episodes occurred on the third day of trial. Wine had to be removed from the courtroom on several occasions because of his disrespectful and loud sarcastic remarks to the court, arguing with the trial judge, constantly complaining in open court about trial counsel's

---

[1] Although the trial court noted that Wine was in contempt on at least fifteen separate occasions, it elected to issue findings and impose sanctions on only five of those instances.

alleged deficient representation, and making remarks to the spectators in the courtroom. Following these episodes, the trial court entered the following order:

> [D]uring the questioning of a witness, the Defendant objected. The court again removed the jury and again advised the Defendant he was to speak only through counsel. The Defendant remained combative and disrespectful. He was then informed he was in contempt (Count I). The Defendant then baited the court to make additional findings of direct contempt on at least 3 additional occasions, which the court did (Counts II, III & IV). The Defendant was so informed. At that time, he turned his back to the court and looked at the gallery where various spectators were seated. He then said to someone "what's so funny" or words to that effect. He was then found in contempt, again (Count V).
>
> The conduct of the Defendant, as recited above, is as heinous as the court has ever witnessed of a criminal defendant. His actions were clearly motivated to undermine these proceedings and to attempt to cause a mistrial.

[5] *Appellant's Appendix* at 4-5. Wine directly appealed the contempt findings to this court, challenging the sufficiency of the evidence and the procedures that the trial court followed in finding him in contempt. Wine also claimed that his sentence was "inappropriate, manifestly unreasonable, or unreasonable." *Wine v. State*, No. 85A02-1307-CR-610, *slip op. at 13* (Ind. Ct. App. Feb. 20, 2014). We affirmed in part and reversed in part, concluding that the record supported

four rather than five episodes of contempt. *Slip op*. at 8.[2] While we also determined that the sentence of 180 days on each contempt finding was proper, we reduced the aggregate sentence to 720 days on the four counts. *Id.* at 11-12.

[6] In a separate appeal, Wine appealed his conviction on the underlying drug dealing charge, claiming that he received the ineffective assistance of trial counsel,[3] that the case should have been dismissed, and that the trial court improperly admitted a statement into evidence that he had made prior to trial. We affirmed Wine's conviction in all respects. *See Wine v. State,* No. 85A05-1307-CR-382 (Ind. Ct. App. March 27, 2014).

[7] Thereafter, on June 6, 2019, Wine filed an amended petition for post-conviction relief, claiming that his trial counsel was ineffective for not objecting to the length of the sentence for contempt because the instances of contempt were part of a single episode. Wine claimed that the aggregate sentence for criminal contempt could not lawfully exceed 180 days pursuant to this court's opinion in *Mockbee v. State,* 80 N.E.3d 917, 922-923 (Ind. Ct. App. 2017), because he did not waive his right to a jury trial. Wine also claimed that appellate counsel was ineffective for the same reasons.

---

[2] We determined that the record supported findings that Wine was in contempt on only four occasions because the trial court did not specify precisely what Wine did that might have supported a fifth count. *Slip op.* at 8.

[3] Wine claimed that his trial counsel was ineffective for failing to: 1) spend sufficient time with him when preparing for trial; 2) advise him of a plea agreement that the State had offered; and 3) file a motion to dismiss the charges prior to trial.

Following a July 15, 2019 hearing on Wine's petition, the post-conviction court denied Wine's request for relief and entered the following order:

1. Wine was previously found to be in direct criminal contempt of Court (Counts I, II, III, & V) following remand from the Indiana Court of Appeals and its decision that Count IV be vacated. The Court of Appeals did not otherwise find fault with the remaining four counts of contempt.

2. The Defendant was sentenced to 180 days of incarceration at the Wabash County Jail for each separate contempt as a sanction for his behaviors, to be served consecutively. As a result, the Defendant received a total sentence of 720 days.

3. These consecutive sentences arose from individual and distinct acts of contemptuous behavior and not a single contemptuous episode. Further, even if they had, *Mockbee v. State,* 80 N.E.3d 917 (Ind. Ct. App. 2017) had not been decided. The Court does not find that either trial or appellate counsel performed deficiently or that the result would or should have been different.

*Appendix Vol. II* at 78. Wine now appeals.

# Discussion and Decision

### *I. Standard of Review*

Our standard of review in post-conviction proceedings is well-settled:

[P]ost-conviction proceedings do not grant a petitioner a 'super-appeal' but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a

rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Jent v. State*, 120 N.E.3d 290, 92-93 (Ind. Ct. App. 2019) (quoting *Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied.*

## II. The State's Cross-Claim

[10] Before proceeding to the merits of Wine's claims, we first address the State's contention on cross-appeal that we are required to dismiss this cause for lack of subject matter jurisdiction because the post-conviction rules do not apply to criminal contempt adjudications. The State asserts that because contempt is not a statutorily-defined criminal offense, Wine may not seek a remedy by way of post-conviction relief.

[11] Our post-conviction relief rules provide that "(a) [a]ny person who has been *convicted of, or sentenced for, a crime* by a court of this state, and who claims: (3) that the sentence exceeds the maximum authorized by law, or is otherwise erroneous . . . may institute at any time a proceeding under this Rule to secure relief." Ind. Post-Conviction Rule 1(1)(a) (emphasis added). We note that any act that manifests a disrespect and defiance of a court may constitute direct

criminal contempt. *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind. 1994); *Mockbee,* 80 N.E.3d at 920. Direct criminal contempt citations are available where "the court has firsthand and immediate knowledge of acts demonstrating a clear disregard for its authority which threaten to undermine the integrity of the judicial process and impede the performance of court work." *Mockbee*, 80 N.E.3d at 920 (quoting *Hopping*, 637 N.E.2d at 1297). The power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute,[4] rests upon the common law. It is inherent in the courts. *Hopping,* 637 N.E.2d at 1296.

[12] In support of the contention that this cause must be dismissed for lack of subject matter jurisdiction, the State directs us to *T.T. v. State*, 439 N.E.2d 655 (Ind. Ct. App. 1982), where the respondent delinquent child appealed to this court following an adjudication that he had committed criminal contempt for disobeying a court order to attend school. This court determined that T.T. was wrongly adjudicated a delinquent child because "all crimes are statutory, and all who are accused of a crime are entitled to a trial by jury, and there can be no conviction of crime except by a jury unless a jury was waived. Contempt of court is not a crime." *Id.* at 657 (citing *Niemeyer et al. v. McCarty et al.*, 51 N.E.2d 365, 367 (Ind. 1943)). In light of this pronouncement, the State posits

---

[4] Our direct contempt statute provides in relevant part that "(a) [e]very person who disturbs the business and proceedings of a court: (1) by creating any noise or confusion; (2) in a court of record; and (3) while the court is open and engaged in the transaction of business is considered guilty of direct contempt of court." Ind. Code § 34-47-2-1.

that Wine may not avail himself of post-conviction remedies because those rules are necessarily limited to persons who have been convicted of, or sentenced for, a criminal offense defined by statute.

[13] While the State correctly observes that *T.T.* stands for the proposition that criminal contempt was not "an offense" under the Juvenile Code, that case was an appeal from the denial of a petition for post-conviction relief. Seemingly, if contempt is not "a crime" for purposes of our post-conviction rules, it stands to reason that T.T.'s appeal would have been dismissed, inasmuch as this court is "required to consider" subject-matter jurisdiction *sua sponte*, even when the parties do not. *Albright v. Pyle*, 637 N.E.2d 1360, 1363 (Ind. Ct. App. 1994). That the merits of T.T.'s appeal were considered and not dismissed supports the notion that a collateral challenge of a criminal contempt finding may be pursued under the post-conviction rules—regardless of what criminal contempt is or was under the Juvenile Code.

[14] We further note that criminal contempt, as its name implies, is "punitive in nature." *McCollum v. FSSA*, 82 N.E.3d 368, 375 (Ind. Ct. App. 2017). One who is subject to criminal contempt is afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys because of the penalties that may be imposed. *See id.* As the United States Supreme Court observed in *Bloom v. Illinois*:

> [C]riminal contempt is a crime in every fundamental respect . . . .
> [I]n terms of those considerations which make the right to jury

trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes.

Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes: "'These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech.'" *Gompers v. United States*, 233 U. S. 604, 610 (1914).

Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case *convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same.* Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates.

391 U.S. 194, 201-02 (1968) (citation and some quotation marks omitted) (emphasis added).

[15] In addition to the above, I.C. § 34-47-2-5(a) provides that if a "defendant is found *guilty* of direct contempt . . . the defendant has the right to appeal the judgment of the court." (Emphasis added). And pursuant to I.C. §34-47-2-5(e), a defendant has the right to move the trial court to reconsider its opinion on the finding of contempt and if that motion is overruled, "*the defendant may appeal as in other criminal actions.*" (Emphasis added).

[16]     Finally, we observe that unlike adjudications for criminal contempt, a finding of *civil* contempt[5] can be collaterally attacked by a motion for relief of judgment pursuant to Indiana Trial Rule 60(B). *See Bello v. Bello*, 102 N.E.3d 891, 895 (Ind. Ct. App. 2018). Because the consequences of criminal contempt are punitive in nature, those actions may not be collaterally attacked under the trial rules because those rules apply only to "suits of a civil nature[.]" Ind. Trial Rule 1. Thus, a petition for post-conviction relief is a criminal contemnor's only opportunity to collaterally challenge such an adjudication. *See Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998) (recognizing that a post-conviction proceeding is the "preferred forum" in which to raise a claim of ineffective assistance of trial counsel, and the only forum in which to raise a claim of ineffective assistance of appellate counsel). For all the reasons above, we decline to dismiss Wine's appeal.

### III. Wine's Claims

### A. Ineffective Assistance of Trial Counsel

[17]     Wine argues that he is entitled to post-conviction relief because his trial counsel was ineffective for failing to object to the length of the sentence that was

---

[5] A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. *Mitchell v. Stevenson,* 677 N.E.2d 551, 558-59 (Ind. Ct. App. 1997), *trans. denied.* The objective of a civil contempt proceeding is not to punish, but to coerce action for the benefit of the aggrieved party. *McCollum*, 82 N.E.3d at 375. Imprisonment is a permissible sanction for an act of civil contempt, but "if the judgment seeks to coerce the defendant into doing an affirmative act by confinement in jail, it must provide that the imprisonment cease as soon as the act is done, so that it gives the defendant the key of his prison in his own pocket." *D.W. v. State*, 673 N.E.2d 509, 512 (Ind. Ct. App. 1996), *trans. denied.*

imposed. Wine contends that the aggregate 720-day sentence cannot stand because he did not waive his right to a jury trial and, therefore, could not be sentenced to more than 180 days of incarceration.

[18] In ineffective assistance of counsel cases, reversal is appropriate where a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that said deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Pennycuff v. State*, 745 N.E.2d 804, 811 (Ind. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. *Id*. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id.* When considering ineffectiveness assistance of counsel claims, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. (citing *Strickland*, 466 U.S. at 690). A claim that trial counsel was ineffective may be disposed of on the prejudice inquiry alone. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999); *Williams v. State*, 706 N.E.2d 149, 154 (Ind. 1999).

[19] In addressing Wine's contentions, we initially observe that the Sixth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, guarantees the right to a jury trial in criminal cases.

*Duncan v. Louisiana,* 391 U.S. 145, 149 (1968). On the other hand, petty offenses, wherein the penalty "imposed does not exceed six months or a longer penalty has not been expressly authorized by statute," may be tried without a jury. *Taylor v. Hayes*, 418 U.S. 488, 495 (1974). "[I]n the absence of legislative authorization of serious penalties for contempt, a State may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months." *Id.* at 496. Sentences exceeding six months may not be imposed absent a jury trial or waiver thereof. *Holly v. State,* 681 N.E.2d 1176, 1177-78 (Ind. Ct. App. 1997).

[20] Wine directs us to *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974) in support of his contention that the aggregate sentence for contempt charges cannot exceed 180 days. In *Codispoti,* the defendant was tried before a judge for contemptuous conduct that occurred during the course of a criminal trial that had been tried in a different court. *Id.* at 508. The judge in the contempt proceedings, who denied Codispoti's request for a jury trial, adjudged Codispoti guilty of seven instances of contempt and imposed an aggregate sentence of three years and three months. Thus, the issue before the Supreme Court was whether Codispoti was entitled to a jury trial because the aggregate sentence for contempt exceeded 180 days. *Id.* 512-13.

[21] Prior to addressing the merits of Codispoti's claim, the Court commented on a trial court's need to maintain order and a deliberative atmosphere in the courtroom:

> '[A] criminal trial, in the constitutional sense, cannot take place where the courtroom is a bedlam. . . . A courtroom is a hallowed place where trials must proceed with dignity. . . .' *Illinois v. Allen,* 397 U.S. 337, 351 (1970) (separate opinion of Douglas, J.).
>
> . . .
>
> 'To allow the disruptive activities of a defendant . . . to prevent his trial is to allow him to profit from his own wrong. The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes.' *Illinois v. Allen,* supra, at 350; 90 S.Ct. at 1064 (Brennan, J., concurring).

[22] *Id.* at 514 (quoting N. Dorsen & L. Friedman, Disorder in the Court: Report of the Association of the Bar of the City of New York, Special Committee on Courtroom Conduct 10-23 (1973); Burger, The Necessity for Civility, 52 F.R. D. 211, 214-15 (1971)).

[23] Similarly, this court recognized in *Cardwell v. State* that a trial judge has the responsibility to control the proceedings by taking responsible steps to insure proper order and discipline. 516 N.E.2d 1083, 1085 (Ind. Ct. App. 1987), *trans. denied.* And in *Illinois v. Allen,* the United States Supreme Court observed that

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

397 U.S. 337, 343-44 (1970).

[24] The majority then observed in *Codispoti* that if "each contempt is dealt with as a discrete and separate matter at a different point during the trial," the defendant has no right to a jury; for each contempt, he can be sentenced to consecutive six-month terms. *Codispoti*, 418 U.S. at 515; *see also Mayberry v. Pennsylvania*, 400 U.S. 455, 463 (1971). The *Codispoti* Court did note that there *are* circumstances where a "contemnor may be punished by a term of no more than six months." *Codispoti*, 418 U.S. at 514. However, a judge does not exhaust the "power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial exceeds six months." *Id.*

[25] The *Codispoti* Court explained that

> [w]hen the trial judge . . . postpones until after trial the final conviction and punishment of the accused or his lawyer for several or many acts of contempt committed during the trial, there is no overriding necessity for instant action to preserve order and no justification for dispensing with the ordinary rudiments of due process. *Mayberry v. Pennsylvania, supra, at* 463-64; *Groppi v. Leslie,* 404 U.S. 496, 499-507, *Taylor v. Hayes,* 418 U.S., at 497. Moreover, it is normally the trial judge who, in retrospect, determines which and how many acts of contempt the citation will cover. It is also he or, as is the case here, another judge who will determine guilt or innocence absent a jury, who will impose the sentences and who will determine whether they will run consecutively or concurrently. In the context of the post-verdict adjudication of various acts of contempt, it appears to us that there is posed the very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate. *Cf. ibid.*

*Id.* at 515.  As a result of the above, the Court recognized that multiple acts of contempt are not considered "separate offenses" if they "arose from a single trial, were charged by a single judge, and were tried in a single proceeding." *Id.* at 517.  If there is but a single act or episode of contempt, the maximum aggregate sentence can be no longer than six months without a jury trial or the defendant's waiver thereof.  *See id.*

[26]  Notwithstanding Wine's reliance on *Codispoti*, he has failed to demonstrate that the trial court here would have been compelled to reduce the length of his sentence, had trial counsel objected.  In *Codispoti,* the Court vacated the aggregate sentence that exceeded 180 days, reasoning that "[i]n the context of the *post-verdict adjudication* of various acts of contempt, . . . there is . . . the very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate."  *Id.* at 515  (emphasis added).

[27]  Unlike *Codispoti,* there was no "post-verdict" adjudication of Wine's contemptuous episodes.   Rather, the trial court imposed a sentence of 180 days on each count immediately after determining that Wine had committed a particular contemptuous act.  As a result, the rule set forth in *Codispoti* is not instructive here, and Wine has failed to show that an objection to the length of his sentence on this basis would have been sustained.

[28]  Wine further contends that his trial counsel was ineffective for failing to object to the length of his sentence in light of this court's decisions in *Mockbee* and *Fearman v. State*, 89 N.E.3d 435 (Ind. Ct. App. 2017).  First, we note that both

cases were decided after Wine's direct appeal was decided. As a result, trial counsel cannot be said to have been ineffective for failing to challenge Wine's sentence on this basis. *See Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004) (holding that counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law) (citing *Trueblood v. State,* 715 N.E.2d 1242, 1258 (Ind. 1999)); *see also Timberlake v. State,* 753 N.E.2d 591, 605 (Ind. 2001) (counsel was not ineffective for failing to raise an issue at a particular stage of the proceedings when there was no appellate authority establishing the point at which the issue should be presented).

[29]  Moreover, we cannot say that there was a reasonable probability that the trial court would have vacated all but 180 days of the sentence had Wine's trial counsel raised the issue. More specifically, the rule announced in *Mockbee* does not control the outcome here. There, the trial court conducted a brief hearing on two of the defendant's pending motions. Throughout the hearing, Mockbee taunted opposing counsel, "constantly interrupt[ed] the Court on a continuing basis," and directed profanity toward the judge. 80 N.E.3d at 919, 921. Mockbee also made "glaring, smirking remarks" and "face gestures to the court" during the hearing. *Id.* at 919. As Mockbee's behavior continued, the trial court had him removed from the courtroom, observing that it was "not going to subject the parties or a jury to this kind of behavior. . . ." *Id.* The trial court subsequently entered its order and

> 'found [Mockbee] in contempt and ordered a sentence of one hundred and eighty (180) days and ordered an additional one

hundred and eighty (180) days for continued actions, words, and disruptive behavior.' (App. Vol. 2 at 47). The trial court ordered 'two separate sentences' of six months 'based upon defendant's failure to cease his disruptive behavior after the imposition of the first contempt sentence.' (App. Vol. 2 at 49).

*Id.* at 920.

[30] On appeal, a panel of this court determined that the defendant's behavior amounted to a single episode for the purposes of sentencing because it:

> occurred within a single proceeding, lasted a relatively short period of time, was not interrupted by another proceeding, and flowed from a single criminal intent—to disrespect and disrupt the administration of justice. Even though [the defendant] continued to behave in a contemptuous manner after the initial contempt citation, his continuing behavior was in response to the trial court's initial contempt citation and flowed from the same criminal objective.

[31] *Id*. at 922. The *Mockbee* Court further explained that "where, as here, multiple acts of contempt form a single contemptuous episode, . . . a single punishment of not more than six months may be imposed, without a jury trial." *Id.*; *see also Fearman,* 89 N.E.3d at 437 (holding that the defendant's disrespectful comments and remarks at a brief sentencing hearing amounted to only one episode of contempt because, as were the circumstances in *Mockbee*, the contemptuous behavior occurred at a single proceeding, lasted only a short time, and flowed from the sole intent to disrupt the proceedings). Notwithstanding this result, the *Mockbee* Court went on to observe that

> determining whether multiple acts of contemptuous behavior forms a single contemptuous episode is a *fact sensitive determination. We can imagine scenarios within a single hearing that might justify multiple contempt citations.* For example, a litigant whose outburst receives a contempt citation might be properly cited again after a period of calm behavior within the same proceeding. *See Smith v. State,* 382 Md. 329, 855 A.2d 339 (Md. 2004) (three acts of contempt were separate and discrete supporting three convictions).

80 N.E.3d at 922 (emphasis added).

[32] Under the circumstances here, it is apparent that the trial court dealt with each instance of Wine's contemptuous behavior as a separate and discrete matter at different points, and every day, during the course of the three-day jury trial. Although the trial court chose to charge Wine with only five counts of criminal contempt, the trial court had cited Wine for contempt "at least fifteen times" and "had [him] removed from the courtroom several times." *Wine,* slip op. at 6. Moreover, there were other occasions during the trial where the judge overlooked Wine's behavior that otherwise might have constituted contempt-worthy comments and remarks. The record shows that there were, in fact, sufficient breaks after each disruption. After each finding of contempt, the trial judge immediately steered from the interruption back to the trial proceedings. The record demonstrates that Wine's remarks and comments amounted to separate contemptuous incidents.

[33] In sum, we do not find Wine's reliance on *Codispoti* or *Mockbee* controlling in these circumstances. *Mockbee* had not been decided at the time of Wine's direct

appeal, and the record supports the conclusion that Wine committed separate acts of criminal contempt over the course of his three-day jury trial. For these reasons, Wine has failed to show that an objection to the 720-day aggregate sentence on this basis would have been sustained. As a result, the post-conviction court properly concluded that Wine was not denied the effective assistance of trial counsel.

### B. Ineffective Assistance of Appellate Counsel

[34] Wine also claims that his appellate counsel was ineffective for failing to raise the sentencing issue discussed above on direct appeal. Wine advances the same arguments about appellate counsel as he does with respect to trial counsel.

[35] The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel. *Massey v. State,* 955 N.E.2d 247, 257 (Ind. Ct. App. 2011) (citing *Bieghler v. State,* 690 N.E.2d 188, 192 (Ind. 1997)). The defendant must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Id.* at 257-58 (citing *Overstreet v. State,* 877 N.E.2d 144, 165 (Ind. 2007)). Our Supreme Court has recognized three categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal; (2) failing to raise an issue on appeal; and (3) failing to present an issue completely and effectively. *Bieghler,* 690 N.E.2d at 193-95. As with claims of ineffective assistance of trial counsel, the contention

that appellate counsel was ineffective may first be disposed of on the prejudice inquiry alone. *Vermillion*, 719 N.E.2d at 1208; *Williams,* 706 N.E.2d at 154.

[36] We previously addressed the issue as to "whether the sentence for contempt findings was proper" in Wine's direct appeal. *Id*. at 1-2. Specifically, we concluded that Wine's sentences, for four instances of contempt, were not inappropriate, not manifestly unreasonable, and not unreasonable. *Id*. at 6. Thus, Wine's challenge at this juncture best fits category (3) above, namely failing to present an issue completely and effectively.

[37] Wine's argument regarding the ineffective assistance of appellate counsel fails for the same reason that Wine's assertion of ineffective assistance of trial counsel fails. The entirety of Wine's claim, citing *Codispoti*, rests on the assertion that his contempt of court did not involve multiple, separate examples of contempt and therefore, the aggregate sentence could not exceed 180 days because he did not waive his right to a jury trial. *See Appellant's Brief* at 12, 18. The circumstances here involved multiple instances of contempt and not one single act, thus removing the sentencing limits or proscriptions described by *Codispoti* and *Mockbee*. Moreover, Wine acknowledges that *Mockbee* had not yet been decided at the time of his direct appeal. Appellate counsel cannot be ineffective for not arguing case law that does not yet exist. *See Timberlake,* 753 N.E.2d at 605. For these reasons, Wine's claim that his appellate counsel was ineffective fails.

[38] Judgment affirmed.

Tavitas, J., concurs.

May, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Bobby D. Wine,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
19A-PC-2268

**May, Judge, concurring in result.**

I respectfully concur in result but write separately to address the State's argument that Wine's appeal should be dismissed and to emphasize the importance that the procedural posture of the case played in determining my vote.

## 1. Applicability of Indiana Post-Conviction Rules

I agree with Judge Altice that Wine's appeal should not be dismissed. In *T.T. v. State*, we held criminal contempt did not constitute a criminal offense if committed by an adult, and therefore the trial court erred in adjudicating T.T. delinquent and committing her to the Indiana Department of Correction under

the portion of the delinquency statute that required finding the juvenile committed an act that would be a criminal offense if committed by an adult. 439 N.E.2d 655, 657 (Ind. Ct. App. 1982). The State contends, based on *T.T.*, that if criminal contempt does not constitute a criminal offense, then a person may not collaterally attack a criminal contempt finding via a petition for postconviction relief because the Indiana Post-Conviction Rules apply only to persons convicted of or sentenced for a crime. I believe the State's argument construes our holding in *T.T.* too broadly.

[41] As Judge Altice notes, criminal contempt is meant to be punitive. *Slip op.* at *8. A person charged with contempt is entitled to certain constitutional safeguards because of the potential penalties, including loss of liberty. *Id.* at *8-*9. Given that a post-conviction proceeding is the "preferred forum" for deciding claims of ineffective assistance of counsel, I agree with Judge Altice that we should allow a person found in criminal contempt to collaterally challenge the contempt finding by filing a petition for postconviction relief. *Id.* at *10 (quoting *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998)).

## 2. Ineffective Assistance of Counsel

[42] The trial court sanctioned Wine for four contemptuous acts that occurred within five pages of transcript. Much to the trial court's credit, the judge patiently and repeatedly explained to Wine that he was to remain quiet during trial and to allow his attorney to address the court on his behalf. Nevertheless, during the State's direct examination of a witness, Wine stated, "Your Honor,

at this time I would like to object." (Prior Case Tr. Vol. II at 21.) The trial court excused the jury and stated to Wine, "You can't follow a simple admonition. You are now in contempt—one hundred and eighty days that doesn't get good time credit." (*Id.* at 22.) The trial court found Wine in contempt additional times during the following exchange:

> Court: Stop. Your attorney has a voice of his own. You do not speak during these proceedings. I'm telling you for the last time you don't say anything while this trial is going on unless it's a response to a question from me, or the State, or your attorney. Nothing. Not hello, goodbye, whatever. You hear me? Do you hear me?
>
> Wine: I hear you. I don't understand you.
>
> Court: You don't understand when I tell you to not speak unless you're - -
>
> Wine: Your Honor - -
>
> Court: - - requested by me?
>
> Wine: Your Honor - -
>
> Court: That's it. That's it. One hundred and eighty days. Now I'm gonna bring the jury back in.
>
> Wine: Well, he better start doing his job.
>
> Court: (Inaudible).  Stop talking.

Wine: Well - -

Court: That it. That's two, one hundred and eighty days.

Wine: Give me a third one.

Court: How about three hundred and sixty? Okay - -

(*Id*. at 23.) The trial court again instructed Wine to remain quiet unless asked a question by the court, the prosecutor, or his attorney. Before the judge brought the jury back into the courtroom, Wine turned to someone in the gallery and said, "All right. Is something funny?" (*Id*. at 25.) The trial court then held Wine in contempt again.

[43] Clearly, Wine was not dissuaded from continuing his disrespectful behavior after being held in contempt and sanctioned. At that point, the court would have best served the objective of maintaining order by removing Wine from the courtroom. *See Wilson v. State*, 30 N.E.3d 1264, 1270-71 (Ind. Ct. App. 2015) (holding trial court did not abuse its discretion by removing defendant from trial when defendant continued to act disrespectfully after being held in contempt), *trans. denied*. If we were evaluating this case on direct appeal, I would vote to remand the case. In that situation, the trial court could choose to modify Wine's sentence to 180 days on the grounds that because the contempt findings and imposition of sanctions occurred in such quick succession, they amount to only one episode of contempt. *See Fearman v. State*, 89 N.E.3d 435, 437 (Ind. Ct. App. 2017) (holding cursing and threatening behavior that "occurred during a

single proceeding, lasted a short period of time, was not interrupted by any other proceeding and flowed from [defendant's] single intent to disrupt the court proceedings" constituted a single, contemptuous episode); *see also Mockbee v. State*, 80 N.E.3d 917, 923 (Ind. Ct. App. 2017) (holding defendant serve one six-month sentence for contempt consecutive to his sentences for his criminal convictions), *trans. denied*. Or, the trial court could conduct a jury trial on the multiple charges of contempt, and if the jury found Wine guilty, the court could impose a sentence greater than six months. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 517 (Ind. 1974) (holding in the context of a post-verdict adjudication for contempt, an alleged contemnor is entitled to a jury trial if the sentence for contempt is to exceed six months).

[44] However, this case is not before us on a direct appeal. Four of the trial court's contempt findings and the 180-day sentences for each finding were affirmed on direct appeal. *Wine v. State*, No. 85A02-1307-CR-610, 2014 WL 684151 (Ind. Ct. App. Feb. 20, 2014). Wine's appeal in the case at bar follows the denial of his petition for post-conviction relief on the basis that both his trial counsel and his appellate counsel were ineffective for not arguing that Wine was entitled to a jury trial. Precedent dictates that we do not declare counsel ineffective for not making a novel argument.

[45] For example, in *Smylie v. State*, our Indiana Supreme Court explained that neither a trial lawyer nor an appellate lawyer would be considered ineffective for failing to argue a defendant's sentence was unconstitutional pursuant to a rule later announced in a United States Supreme Court decision. 823 N.E.2d

679, 690 (Ind. 2005), *cert. denied*, 546 U.S. 976 (2005). To impose such a duty would "drastically alter the burden imposed on counsel as to what constitutes effective assistance to their clients." *Id*. We judge an attorney's performance based on the case law at the time and will not penalize an attorney for not anticipating changes in the law. *Wieland v. State*, 848 N.E.2d 679, 683 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*, *cert. denied*, 549 U.S. 1038 (2006).

[46] Wine's postconviction counsel draws parallels between his case and the United States Supreme Court's opinion in *Codispoti*. However, as Judge Altice explains, "Unlike *Codispoti*, there was no 'post-verdict' adjudication of Wine's contemptuous episodes. Rather, the trial court imposed a sentence of 180 days on each count immediately after determining that Wine had committed a particular contemptuous act." *Slip op*. at *15. Justice White, writing for the plurality in Part II of *Codispoti*, recognized "[t]here are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur." 418 U.S. at 513 (internal citations and quotation marks omitted). That is what happened in Wine's case. The court summarily convicted and sentenced Wine for each act of contempt as it occurred.

[47] Justice Marshall did not join Part II of Justice White's opinion in *Codispoti*. He stated in his concurring opinion:

> Where the contemptuous acts arose out of a single course of
> conduct by the defendant, I think that they should be treated as a

single serious offense for which the Sixth Amendment requires a jury trial, whether the judge seeks to use his summary contempt power in individual instances during trial or tries the contempts together at the end of trial.

*Id*. at 519-20. Justice Marshall's concurrence was prescient because Indiana law has since evolved to conform with his beliefs regarding contempt. However, Wine's attorneys were not ineffective for failing to argue the court should adopt the position stated in Justice Marshall's concurrence, but unsupported by the rest of the Court, because the Indiana law subsequent to *Codisponti* was not in existence at the time of Wine's trial. *See Gann v. State*, 550 N.E.2d 73, 75 (Ind. 1990) (holding petitioner's trial counsel was not ineffective when "he did not make an objection to an instruction which had not yet been held to be reversible error").

[48] I vote to affirm the denial of Wine's petition for postconviction relief because there was not any Indiana case law available at the time of Wine's trial or his direct appeal to indicate Wine was entitled to a jury trial before the court imposed sentences for contempt which totaled over 180-days. I recognize Justice Marshall advocated for such a result in *Codispoti*. Nonetheless, I will not vote to hold that Wine's attorneys were ineffective for failing to advance such an argument.